**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 95-5662

GUS JOHN BOOGADES,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Richard B. Kellam, Senior District Judge.
(CR-95-34)

Argued: October 28, 1996

Decided: December 6, 1996

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Andrew Robert Sebok, Norfolk, Virginia, for Appellant.
Charles Philip Rosenberg, Assistant United States Attorney, Norfolk,
Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States
Attorney, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gus John Boogades was convicted of nine counts of wire fraud and seven counts of money laundering in violation of 18 U.S.C. §§ 1343 & 1956(a)(1)(A)(i). Boogades appeals his convictions on three grounds -- that the evidence was insufficient to support his convictions on the wire fraud charges, that the trial judge should have set aside the verdict when the jury found him guilty of sixteen substantive counts but not of conspiracy, and that the trial judge should not have sent the jury back for further deliberations when one juror expressed disagreement with the verdict. Because the evidence is ample to support the verdict and the trial judge acted properly in sending the jury back and then accepting its final verdict, we affirm the judgment of the district court.

I.

Boogades' convictions arose out of a telemarketing scheme operating as "Colonial Distributing, Inc." in Norfolk, Virginia from March to October 1992. Boogades and two of his employees, Gerald Parady and David Gabriel, moved to Norfolk from Las Vegas, Nevada, and hired local employees to act as "telephone solicitors" for Colonial. Parady and Gabriel reported to Boogades, and the three of them trained new recruits and drafted scripts for use in the solicitations.

Victims of the marketing scheme -- many of whom were elderly -- were promised that if they purchased cheap pens, key chains, plastic coffee mugs, calendars or cosmetic kits at exorbitant prices between $298 and $998, they would automatically win one of four bonus awards. The four bonus awards were described as: a 1992 Pontiac LeMans automobile (or its cash equivalent); a $2,500 home entertainment center including a stereo, a 27-inch color television, and a VCR; a $1,500 cashier's check; and a $5,000 home shopping spree.

2

In fact, the first three bonus awards never existed and were never awarded. Every victim "won" the home shopping spree.

The shopping spree consisted of a catalogue from which victims could purchase merchandise, at grossly inflated prices, with an ostensible discount of up to 80%. The "discount" on each purchase was to be subtracted from their $5000 credit. Thus, victims were required to spend significant sums of money on catalogue items to benefit from their $5000 shopping spree. Testimony at trial revealed that even the "discounted" prices paid by victims for catalogue items was at or above their retail prices. Boogades himself operated the catalogue business out of a consumer mail box in Norfolk.

Colonial solicitors promised some victims free airline tickets or free vacations to Hawaii and Florida. These "prizes" from a travel company in Florida turned out to be vouchers that required a nonrefundable cash deposit and were burdened by so many restrictions that they were effectively worthless. One Colonial employee called previous buyers of Colonial products to tell them that if they made an additional purchase they would be eligible for a $40,000 cash prize (later increased to $50,000 with Boogades' agreement). The prize never existed and was never awarded.

Besides descriptions of nonexistent prizes, the sales pitches were riddled with other misleading statements and outright lies about Colonial, its customers, and its operations. Nine victims at trial testified to having been lied to, misled, and disappointed or outraged by Colonial's products and "prizes." Three of these victims recalled specifically talking with Boogades, and a fourth spoke with"Parady's boss," who was Boogades.

Boogades, who owned Colonial, oversaw its operations, and controlled the company's finances, also cheated his employees out of significant sums of money by withholding wages from their paychecks and failing to forward the withheld amounts to the IRS.

After a trial lasting one week, the jury found Boogades guilty of nine counts of wire fraud and seven counts of money laundering. It was unable to reach a verdict on the conspiracy charge, so the judge declared a mistrial on that count and the charge was dismissed by the

3

government. Boogades was sentenced to 87 months in prison followed by three years of supervised release. He was also ordered to pay $3468.00 in restitution to the nine testifying victims, and a special assessment of $800.00. Boogades appeals.

## II.

### A.

Boogades first challenges the sufficiency of the evidence to support his conviction on the wire fraud counts. He argues that no evidence was introduced to prove that he knew of the fraud and deception being perpetrated on Colonial's victims. Boogades claims that because he was rarely in the "boiler room" where the calls were made, he was "unaware of the fraudulent path Colonial's operation had take[n]."

Boogades' assertion is patently false. At least three of the victims -- Dwight Sours, Wayne Lobo, and Barbara Allran-- specifically recalled speaking with and receiving false or misleading information from Boogades himself. Colonial employees testified that Boogades controlled all aspects of Colonial's operations, and that he participated in hiring, training, monitoring phone calls, drafting scripts, and fabricating phony promotions. Colonial's office manager testified that all customer complaints -- which came at least daily -- were passed on to Boogades.

### B.

Boogades next alleges that the jury's verdict was "a legal impossibility" because they found him guilty of sixteen substantive counts, but not guilty of conspiracy. Boogades argues that the district court should have set aside the jury's verdict as inconsistent.

In United States v. Martindale, 790 F.2d 1129, 1133-34 (4th Cir. 1986), this court ruled that a jury may validly convict a defendant for the offense of conspiracy while acquitting him of the substantive offenses. The reverse is also true, since:

4

> It has long been the rule that inconsistency is not a ground for voiding a verdict of conviction. There may be a number of reasons why a jury may reach what may appear to be inconsistent verdicts but, so long as the evidence clearly supports the guilty verdict, inconsistency is no ground for invalidating the conviction.

Id. at 1134.

Here, as noted, the evidence supports conviction on the substantive counts.

C.

Finally, Boogades argues that the judge erred in sending the jury back for further deliberation after juror Viola Rivers answered "no" when polled on the original guilty verdict for the conspiracy count. Boogades claims that the judge should have declared a mistrial because further deliberations put undue pressure on Ms. Rivers to change her vote, and led to "bartering of results in order to reach unanimity."

A judge acts within his discretion in sending a jury back for further deliberations when a poll reveals disagreement on the verdict. Rule 31(d) of the Federal Rules of Criminal Procedure instructs, "[i]f upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." In the instant case, the trial judge followed the rule, simply advising the jury that "[t]he verdict must be unanimous," and asking it to deliberate further after Ms. Rivers expressed disagreement with the first verdict. The court did not question, chastise, or pressure Ms. Rivers. Indeed, the fact that the jury eventually returned deadlocked in the conspiracy count suggests that Ms. Rivers' will was not overborne during the further deliberations. In any case, courts are not permitted to engage in conjecture about how the jury eventually reached its verdict. U.S. v. Blankenship, 707 F.2d 807, 809-10 (4th Cir. 1983). As long as the judge was within his discretion to send the jury back to deliberations -- and he was -- we will not disturb the verdict that properly resulted.

5

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

6